The complainant was, prior to August, 1923, the owner of certain premises in Egg Harbor City, and was conducting a florist business thereon.
In that month he entered into an agreement in writing (which was not dated) with the defendants, wherein he agreed to convey the lands and premises in question, together with the goods and chattels, and all his right and goodwill in the business, to the defendants for the sum of $15,000, *Page 197 
which they agreed to pay, as follows: $5,000 upon the signing of the agreement; $5,000 to $7,500 to be raised by the defendants upon a mortgage to a local building and loan association, and to be paid to the complainant, and the balance to be evidenced by a mortgage to the complainant, running for five years at six per cent. interest per annum. The complainant further agreed that he would not enter into the flower business in Egg Harbor City or vicinity for at least ten years from the date of the agreement. The complainant and his wife, by deed dated September 1st, 1923, conveyed the said lands and premises to the defendants, and they entered into and are still in possession of the premises.
The Germania Building and Loan Association agreed to loan the sum of $7,500 upon the premises, and the defendants made, executed and delivered a bond, secured by a mortgage in that amount, dated September 1st, 1923. This mortgage was recorded in the clerk's office of Atlantic county on November 22d 1923.
At the time of the making of this mortgage, it was understood that the same should be held in escrow until the association should be in funds to pay the amount.
The defendants also, on the 1st day of September, 1923, made and executed a mortgage to the complainant in the sum of $2,500, papable in five years from the date hereof, this being the balance of the purchase price. On or about February 4th, 1924, the defendants served notice upon the complainant rescinding the contract and demanding the return of the $5,000 paid as a part of the consideration, giving as a reason therefore that the contract had been entered into through misrepresentation and fraudulent statements as to the value of the florist business.
The defendants' testimony is that a tender of a deed for the premises was made by him to the complainant. This is denied by Obergfell.
On March 10th, 1924, or a day or so previous thereto, Wicks called upon Herman L. Hamilton, the attorney of the building and loan association, and stated he would not need the money from the association, as evidenced by the mortgage. *Page 198 
Hamilton thereupon caused the mortgage to be canceled of record.
It will be noted that the bill in this cause was filed February 14th, 1924, and service of the sub poena ad respondendum was acknowledged by solicitor for the defendants on the same date.
The complainant's prayer is for a reconveyance of the premises, a cancellation of the building and loan mortgage (which has been canceled of record since the filing of the bill), a surrender of the possession and forfeiture of the amount paid on account of the purchase-money, or a compliance with the terms of the contract, and for general relief.
The first defense is, substantially, that complainant falsely represented that the business had paid him the sum of $12,000 a year for several years last past, and would pay the sum of $12,000 per year.
The second defense is that the complainant falsely represented to the defendants that the papers they were signing were not mortgages, and that they are therefore void.
This has not been pressed. An examination of the mortgages in question reveal that they were duly executed and acknowledged before Herman L. Hamilton, a master in this court, the attorney of the building and loan association, and who witnessed the original agreement for the sale of the land.
Mr. Hamilton was present as a witness at the hearing in this cause. This second defense must be considered as abandoned.
The third defense is that the defendants rescinded the contract.
The fourth defense is embraced in the first. The fifth and sixth defenses are that complainant falsely represented that the business produced a profit exceeding $3,500 per year.
The seventh and eighth defenses are that the complainants falsely represented the amount of annual purchases made by a considerable number of patrons of the business.
The counter-claim is that, because of these alleged false statements, they (the defendants) have been greatly damaged, and pray that the deed from Obergfell and wife to defendants *Page 199 
be canceled; the complainant be compelled to return the said sum of $5,000; the bond and mortgage to the building and loan association, and the bond and mortgage to Obergfell be canceled.
The testimony taken was very voluminous and a great number of checks and bank statements were offered in evidence. No regular or complete books of account appear to have been kept by either of the parties, certainly not by the complainant.
It is clearly proven, however, that Obergfell did a business of approximately $12,000 the last year he conducted it, and that, beginning with the taking over of the business by Wicks, the volume of business steadily and rapidly decreased.
This is easily understandable. I cannot help but know, even should the testimony not be complete upon this point, that Egg Harbor City is a city formerly exclusively of German residents — now, to a great extent, at least, of Germans or descendants of the former residents.
The testimony is that Obergfell is a descendant of the original settlers in the city, and that he has lived there all his life, and has been in this business ever since boyhood, having developed it, as he says, "from nothing."
He has had no other business and has made a living for himself and family, and accumulated the property in question, exclusively, from the business.
Wicks is of English descent, a stranger in the city, and has never had any experience in the selling end of the business.
It cannot be considered astonishing if it be found that the business has not kept up to the volume which Obergfell enjoyed.
I am satisfied that the first defense (which also included the fourth defense) must fail. If Obergfell stated that he did a business of about $12,000, as testified to by witnesses of the complainant, I am satisfied that that was approximately the correct amount, and that the statements in reference thereto made by him were not false and fraudulent. *Page 200 
The second defense has been abandoned. The fifth and sixth defenses that the business produced a profit exceeding $3,500 a year. I am unable to find this statement, if made, false or fraudulent.
The remaining defenses are that false statements were made as to the amount of business done with a large number of patrons. A careful consideration of the testimony convinces me that such representations were not made by Obergfell. It is inconceivable that he would make such statements to Wicks, and immediately and before Wicks went into business, show him the sales book, which would at once contradict this statement. It is very clear that Obergfell did not do the volume of business with respective patrons which Wicks claims Obergfell stated to him.
It is claimed that Obergfell stated that Herman L. Hamilton made annual purchases of $300. Hamilton says his purchases never amounted to over $100. If Wicks was relying upon this statement, he could easily have ascertained from Hamilton who was the attorney in all the matters concerning the agreement of sale and the respective instruments.
It seems natural that he would have done so, as his wife testified that she always doubted Obergfell and told him so.
With the exception of the amount sold to Dr. James, who acted as a representative of the business in a neighboring town, the amounts claimed as having been represented, and the business actually done, differ so greatly as to tax the credulity, that any man would make such statements so evidently false, and subject to such contradictory proof. A statement of some of them is illuminating:
Of Mischlich claimed $600, actually $40 to $50.
Of Laielli claimed $300, actually $25.
Of Winterbottom claimed $600, actually $40 to $50.
Of Dr. Frank claimed $400, actually $35 to $40.
Of Eastern Star claimed $300, actually $4.
Finding that there were no false and fraudulent representations as to this alleged statement, the third defense, that of rescission, must likewise fail.
A decree will be advised in accordance with these views, the form of which will be settled at a hearing upon notice. *Page 201